NelsoN, J.,
delivered the opinion of the Court.
On the 5th February, 1859, complainant recovered a judgment before a Justice against Meriday Hin-son for $76.50 and costs, upon which execution was regularly issued on the 13th, and levied 23rd July, 1859, by a constable, on a tract of land, as the property of Hinson, containing by estimation one hundred and thirty-seven and three-quarters of acres, and fully described in ■ his returns. The original papers were filed in the Circuit Court of Henderson county, where the land is situate, and judgment there, irregularly, rendered in favor of the plaintiff at July Term, 1859, for $78.60, and the land condemned and ordered to be sold; and an order of sale having issued to the sheriff, the same was sold at public sale, to the complainant, on the 28th November, 1859, for $88.32. He raised his *252 bid in consequence of certain executions in favor of G-. ~W. Smith to |171.85, and on the 28th. October, 1863, the successor of the former sheriff executed to him a deed for the land, in which the above facts are fully recited. On the 20th March, 1869, the complainant filed this bill in the Chancery Court at Lexington, in which he states that the original papers were consumed when the Courthouse at 'Lexington was burned by the Federal soldiers. He charges that Meriday Hinson, being in embarrassed circumstances, purchased the land on the 9th February, 1863, from one Martin Stewart, since deceased, for the consideration of |750, and fraudulently procured the execution of a deed therefor from Stewart to John M. Flinson and George ~W. Hinson, two infant children of the said Meriday Hinson, with the view to hinder and delay complainant in the collection of his judgment; that Jno. M. Hinson has since departed this life intestate, unmarried, and without issue; that no part of the purchase money was paid by either of said children; that the deed, to them, is fraudulent and void, and forms a cloud over complainant’s title, and he prays that the same may ■ be removed; that the deed from Stewart be declared fraudulent and void; that the title of complainant may be declared; that Meriday Hinson be compelled to account for the rents and profits; that complainant may be put into possession of the land; and that general relief may be granted.
The deed from Stewart to John M. and George *253 W. Hinson, is exhibited, and purports to have been executed 9th. February, 1859, in consideration of $750, and was registered 16tli February, 1859.
In the progress of the cause, leave was granted complainant to amend his bill, by asking that the satisfaction of the judgment be set aside: that a lien be declared in his favor by virtue of the levy; that the land be sold, and the deed from Stewart annulled, and that if mistaken in the relief prayed for, such other and further relief may be granted as the nature of his case may demand.
It is stated in the transcript that this amendment was accordingly made of record, and the cause continued.
The cause was heard 9th April, 1870, upon the answers, proofs, and exhibits, and the Chancellor being of opinion that complainant is not entitled to relief, dismissed his bill, and complainant appealed to this Court.
It appears from the evidence that Meriday Hin-son was the owner of a tract of land on Cane Creek, which he exchanged with Stewart for the tract of land in controversy, of which he took possession in 1854 or 1855, according to the statement of one witness, or in 1858, as stated by another; that he has resided upon it ever since, having erected buildings, and made other valuable improvements thereon, to the value of about one thousand dollars; that when the deed from Stewart was executed, one of the sons was about seven, and the other about twelve or fifteen years of age; *254 tbat they resided with their father, and were utterly unable to pay for the land; that their father owned but little personal property at the time of the levy, although he had enough to pay complainant’s debt, and then declared to the constable that he had no property subject to execution; that after the execution of the deed from Stewart, Meriday Hinson was not only in the full possession and enjoyment of the land, but actually leased a part of it to one of the witnesses, and afterwards verbally contracted to sell it to one Swafford, in the fall of 1863, having it in contemplation at that time to remove to the State of Illinois, though he did not accomplish his purpose; that he then declared that he had - caused the deed to be made “to his two boys,” to prevent complainant from collecting his debt; that at times he spoke of paying the debt, and appeared to be making arrangements for that purpose, but at other times insisted that it was unjust, and that when another creditor applied to him for payment in 1859, he “laughed him to scorn,” and declared that he had nothing that could be levied on, as he had caused the deed to be made to his sons. To another witness he said that “the Michigan soldiers had told him that the 'Secesh would not be allowed to hold any land in this country.”
Meriday Hinson admits that judgment was rendered against him, but denies in his answer that he had any notice of the sheriff’s sale. The latter statement is fully disproved. He states that he is not claiming the wrongful and forcible possession of *255 tbe land, and that be is tbe tenant of G-eo. ~W. Hinson. He denies that be purchased tbe land, or caused it to be conveyed to Ms sons, to . binder and delay complainant; states that, be was not insolvent, or embarrassed in bis circumstances, and was not called upon by tbe constable for personal property.
He says that “be is not advised, and does not know of tbe said John M. & George ~W. Hinson ever having paid any part of said consideration money to said Stewart, and that be never paid any part of tbe consideration money, as mentioned in tbe bill of complainant, and as charged.” He does not even pretend tbat the land was an advancement to bis children. He states that valuable improvements were made upon tbe land, but does not disclose by whom or at whose cost, although the proof abundantly shows that he made them.
In these and other particulars, tbe answer is exceedingly vague, evasive and unsatisfactory, and is fully disproved; and there is not tbe slightest doubt that Meriday Hinson, in tbe view of a court of equity, is tbe true owner of the land, and caused and procured the conveyance to be made to his sons, for tbe fraudulent purpose of hindering and delaying tbe complainant and other creditors in tbe collection of their just demands.
The complainant is not entitled to the relief prayed for in Ms original bill. Tbe legal title to the land was in John M. & George "W. Hinson, at the time of tbe levy and sale, and no title was communicated to the complainant by the sheriff’s deed. *256 But under Ms amended bill, be bas tbe right to bave tbe satisfaction of his judgment set aside, according to Henry v. Keys, 5 Sneed, 489, which was founded upon the act of 1847, c. 191—Acts 1847-8, 823. That act is substantially re-enacted in the Code, 2990, 2996.
It is not necessary to discuss all tbe positions assumed for defendants, but it is adjudged that upon familiar and well established principles, the complainant is entitled to a decree, declaring tbe conveyance to John M. and George W. Hinson fraudulent and void, and directing the land to be sold for tbe satisfaction of his debt, unless tbe debt and costs are fully satisfied and discharged within sixty days from tbe da'te of the decree.[1] In ascertaining tbe amount due complainant, tbe Master will only calculate tbe amount of bis judgment before the Justice, with interest, and will not allow the amount of tbe two executions in favor of G-. "W. Smith, mentioned in tbe sheriff’s deed, as there is no proof in the record that those debts were due to, or paid by complainant. But if tbe complainant so desires, the cause may be remanded to tbe Chancery Court at Lexington, where proof may be beard on that subject, and if it is established that complainant was tbe owner of said debts at tbe time of filing bis bill, a decree will be pronounced in his favor for tbe three debts and costs, and the land will be sold for its satisfaction.
Reverse tbe Chancellor’s decree, and let tbe costs of this cause, in this Court and tbe Court below, be paid out of tbe proceeds of sale.

 See cases cited ante 250 in note.